NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | Civil Action No. 05-2046 |
| v. : | **OPINION** |
| KENNETH ESDALE, : | |
| Defendants. : | |

**KATHARINE S. HAYDEN, U.S.D.J.**

Currently before the Court is a motion to dismiss filed by the United States ("Plaintiff," "United States," or "the government") in response to defendant Kenneth Esdale's ("defendant's," "Esdale's") breach of contract and tort counterclaims for lack of subject matter jurisdiction.

In 1999, the United States engaged in a sale of real property ("the Property") in Ocean City, New Jersey to Kenneth Esdale. Complaint at ¶¶ 46-56. This sale was consummated by a Quitclaim Deed that was executed on October 1, 1999. Complaint at ¶ 52. The United States alleges that Esdale obtained title to the Property through several "wrongful acts" to suppress and/or eliminate rival bids for the Property, Complaint at ¶¶ 53-56, which "resulted in the transfer or diversion of the Property to Mr. Esdale for less than fair value." Complaint at ¶ 56.

Esdale brought two counterclaims against the government, alleging that "its agents, employees, servants and/or representatives, had an affirmative duty, as owner of the Property, to disclose all known latent defects or hidden dangerous conditions on the Property to prospective

1

purchasers." Deft's Answer, Affirmative Defenses and Counterclaims, Counterclaim ("Counterclaim") at ¶ 6. Esdale alleges the same facts in bringing both counterclaims – that the government failed to disclose a defective condition on the Property – characterizing one as a breach of contract claim and one as a tort claim. Deft's Answer, Affirmative Defenses and Counterclaims, First Counterclaim and Second Counterclaim ("Counterclaims").

The government brings this motion to dismiss as to both counterclaims. It contends that Esdale's tort counterclaim is excluded from the types of tort claims that may be asserted against the United States. Regarding the contract counterclaim, the government argues that subject matter jurisdiction is lacking because the contract at issue states that the Property was being sold "as is."

### I. LEGAL STANDARD FOR MOTION FOR DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

When a motion to dismiss is brought under Rule 12(b)(1), the plaintiff must bear the burden of persuasion. Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). (On the other hand, under Rule 12(b)(6), the defendant has the burden of showing no claim has been stated. Id.). Although a court can grant a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction based on the legal insufficiency of a claim, dismissal is proper only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or ... is wholly insubstantial and frivolous." Id. at 1408-1409 (citing Bell v. Hood, 327 U.S. 678, 682 (1946); Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974). A court usually must assume jurisdiction over a case before deciding legal issues on the merits. Bell, 327 U.S. at 682. In determining a motion to dismiss for lack of subject matter jurisdiction pursuant

to Rule 12(b)(1), the court is not limited to the face of the pleadings – it may review "any evidence" to resolve factual disputes regarding the existence of jurisdiction. Norman v. United States, 1996 WL 377136 at *1 (E.D. Pa. July 3, 1996).

## II.     TORT COUNTERCLAIM

### A.     SOVEREIGN IMMUNITY ARGUMENT

Esdale's tort counterclaim alleges that the United States "knew that the bulkhead on [the] Property was severely damaged and that said damage was concealed from view." Counterclaim, at ¶ 5. He claims that the government had a duty to disclose the information and failed to do so. Counterclaim, at ¶ 6, 7. He further asserts that he relied on such failure and incurred damages as a result. Counterclaim, at ¶ 8-10.

The United States argues that the Federal Tort Claims Act protects the United States from liability for misrepresentation, as it is within the ambit of sovereign immunity. Pl's Br. at ¶ IIB.

The sovereign immunity doctrine protects the United States from being sued without its consent; if a claim is within the scope of the doctrine, then a court does not have subject matter jurisdiction over that claim. Lane v. Pena, 518 U.S. 187, 192 (1996); Richards v. United States, 176 F.3d 652, 654 (3d Cir. 1999). The Federal Tort Claims Act ("FTCA") provides a limited waiver of the immunity. 28 U.S.C. § 1346(b). All waivers must be strictly construed and unequivocal. United States v. Mitchell, 445 U.S. 535, 538 (1980).

The FTCA provides an avenue for the United States to be sued for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office of employment...." 28 U.S.C. § 1346(b). The government, however, argues that Esdale's claims fall within one of the

enumerated exceptions providing for circumstances in which the United States may not be sued. 28 U.S.C. § 2680.

Section 2680(h) of 28 U.S.C. applies to claims against the United States arising out of misrepresentation. The U.S. Supreme Court outlined the scope of the "misrepresentation" exception to the Tort Claims Act in United States v. Neustadt, 366 U.S. 696 (1961). In that case, Neustadt purchased a house in reliance on an appraisal undertaken by the Federal Housing Administration (FHA) for mortgage insurance purposes. After he moved into the house, cracks appeared in the ceilings and walls of his house. Id. Neustadt sued the government under the Tort Claims Act, claiming that the cracks were caused by structural defects that had not been noticed by the FHA appraiser during the course of his inspection. Id. He alleged that the FHA had negligently inspected and appraised the property, and that he had justifiably relied on the appraisal in paying a higher price for the house than he would otherwise have paid. Id. He sought to recover the difference between the fair market value of the property and the purchase price. The Neustadt court held that the claim arose out of "misrepresentation" under § 2680(h), as Neustadt's claim was that the government had breached its "duty to use due care in obtaining and communicating information upon which [the plaintiff] may reasonably be expected to rely in the conduct of his economic affairs." Id., at 706-707. The Court stated that nothing indicated "that Congress intended, in a case such as this, to limit or suspend the application of the 'misrepresentation' exception of the Tort Claims Act," and that Congress, in enacting Section 2680(h), "clearly meant to exclude claims arising out of negligent, as well as deliberate, misrepresentation." Id. at 708-710; 702.

About 20 years later, the Supreme Court further clarified its definition of the FTCA

exception when it delineated that "[t]he test in applying the misrepresentation exception is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information." Block v. Neal, 460 U.S. 289, 296 (1983). When the court examines the claim to determine whether it falls within the exception, it must examine the substance of the claim, rather than the language the plaintiff used in labeling it. See JBP Acquisitions, LP v. US, 224 F.3d 1260, 1264 (11th Cir. 2000) (stating that "the substance of the claim and not the language used in stating it ... controls" whether the claim is barred by the FTCA exception.). Once a claim passes this test, and it is determined that the exception applies, "the assertion of a cause of action against the government based upon either mis-communication or non-communication of the information in question" is precluded. Muniz-Rivera v. United States, 326 F.3d 8, 13 (1st Cir. 2003).

### B.   RECOUPMENT ARGUMENT

Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the transaction or occurrence giving rise to the plaintiff's claim. Federal Deposit Insurance Corporation ("FDIC") v. diStefano, 839 F.Supp. 110, 122 (D.R.I. 1993). In that case, the district court held that "[i]n order to avoid the procedural requirements of the FTCA, a recoupment counterclaimant must, in addition to addressing the same transaction or occurrence as the main claim, only aim at defeating the government's claim" Id. (citations omitted). If a counterclaim is deemed a "recoupment" claim, then it may be brought before the court, even if it would otherwise be barred by the FTCA through 28 U.S.C. § 2680. Id. (citing United States v. Johnson, 853 F.2d 619, 621 (8th Cir. 1988); Federal Deposit Ins. Corp. v. Lattimore Land Corp., 656 F.2d 139, 143

(5th Cir. 1981)).

> In FDIC v. diStefano, the district court reasoned:
>
> the recoupment exception [applies] to only defensive claims ... [because] a claim whose object is only to reduce or eliminate the government's claims does not implicate recovery from the United States Treasury.  It therefore does not raise the same sovereign immunity concerns as a suit which seeks to recover money in addition to defeating the government's claim.

839 F. Supp. at 122 (citations omitted).  See also United Structures v. G.R.G. Engineering, 9 F.3d. 996 (1st Cir. 1993).  The court determined that the two claims that would be excluded by the FTCA – the conspiracy to defraud and the contract claims – both arise from the FDIC's alleged interference with the defendant's ability to cure the default on his mortgage.  Because they both arise from the same transaction or occurrence, the recoupment theory would allow recovery if the defendant succeeds on the merits.  Id.  Recoupment would allow recovery, but only if the defendant succeeds on the merits, and only up to the extent of the government's recovery.  Id. at 123.

Applying the analysis in FDIC, these counterclaims are "defensive" claims, and arise from the same transaction or occurrence that gave rise to the original claim.  In the event defendant succeeds on the merits of his tort counterclaim, his claim for recoupment is viable, and summary judgment as a matter of law is not appropriate.

### III.	BREACH OF CONTRACT COUNTERCLAIM

The United States argues that this Court lacks subject matter jurisdiction to hear Esdale's breach of contract counterclaim because "a material fact upon which Mr. Esdale relies is lacking," U.S. Br. at 6, inasmuch as Esdale has not established that the government breached a

6

contractual duty to disclose defects and a contractual right by Esdale to rely on such a duty. U.S. Br. at 6-7.

It is undisputed that the contract stated that it was being sold "as is." See, e.g., Silbermann Declaration ("Ex. A") at ¶ 10 (stating that "[s]eller makes no representation as to the condition of the property"); ¶ 27 (stating "[n]otwithstanding anything contained in this contract to the contrary, the Buyer understands that he is purchasing the property from the Seller 'As Is.' The Seller will not undertake any repairs whatsoever."). The government argues that any attempt by Esdale to construe a failure by the government to disclose any defects is actually a misrepresentation claim couched in contract terms. See Edelman v. Federal Housing Administration, 382 F.2d 594 (2d Cir. 1967) (rejecting an attempt to couch a misrepresentation claim as a breach of an implied contract of fair dealing). It argues that because the contract unambiguously provides that it is for the sale of the Property "as is," any "[a]llegations of failure to disclose property conditions ... simply cannot support an action for breach of this contract." U.S. Br. at 7.

Esdale responds that New Jersey law allows for damages to be recovered, even when property is purchased pursuant to an "as is" contract, when it is "based on fraudulent conduct of the seller," citing Weintraub v. Krobatsch, 64 N.J. 445, 453 (1974). In Weintraub, the New Jersey Supreme Court did not construe the contract's stipulation that the purchaser accepted the property in its "present condition" to bar the defendant's claim of fraudulent concealment. Id. at 456. The court held that "if the trial judge finds such deliberate concealment or nondisclosure of the latent infestation not observable by the purchasers on their inspection, he will still be called upon to determine whether ... the concealment or nondisclosure was of such significant nature as

to justify rescission." Id.

But applied here, Weintraub does not save this counterclaim because the issue is whether the "as is" claim bars a *contractual* claim and thereby eliminates a basis from which to bring a claim for breach of contract. Esdale's argument does not speak to this issue. Weintraub involved a claim of fraud, not of contract. The Weintraub court held that although the contract language stated that the purchasers would accept the property in its "present condition," this did not bar a party from bringing a fraudulent concealment of defect claim. Id. at 453 (discussing the influence of the "present condition" language on a claim alleging "fraudulent conduct of the seller."). See also Id. at 452 (stating that "if either party to a contract of sale conceals or suppresses a material fact which he is in good faith bound to disclose then his silence is fraudulent."). In contrast, Esdale's contract-based claim, although stated in breach of contract terms, is actually the same as the misrepresentation claim.

### IV.  CONCLUSION

For the foregoing reasons, the government's motion to dismiss the tort counterclaim is **denied** and the motion to dismiss the breach of contract counterclaim is **granted**.

An appropriate Order accompanies this Opinion.


Dated: July 25, 2006               /s/ Katharine S. Hayden
                                   KATHARINE S. HAYDEN, USDJ